UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
---------------------------------------------------------
In re:

DAVID WILTSIE,                                    Case No. 10-12161
                                                  Chapter 7
                Debtor.
---------------------------------------------------------
APPEARANCES:

Richard Croak, Esq.
*Attorney for Debtor*
314 Great Oaks Boulevard
Albany, NY 12203

Philip J. Danaher, Esq.
*Chapter 7 Trustee*
252 Broadway
Rensselaer, NY 12144

Hon. Robert E. Littlefield, Jr., Chief United States Bankruptcy Judge

## MEMORANDUM-DECISION AND ORDER

Currently before the court is the Motion to Compel Turnover filed by the Chapter 7 trustee, Philip J. Danaher, Esq. ("Trustee") seeking, pursuant to 11 U.S.C. §§ 521(a)(3) and (4),[1] turnover of funds that were in the debtor's checking account at the time he filed for bankruptcy.

## JURISDICTION

The court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a), 157(b)(1), (b)(2)(E), and 1334.

## FACTS

Based upon the record, including the Joint Stipulation of Facts (ECF No. 21), the court finds the following facts to be undisputed. On June 8, 2010, David Wiltsie ("Debtor") filed a Chapter 7 petition and related schedules. On Schedule B, Personal Property, the Debtor lists a

---

[1] Unless otherwise noted, all statutory references herein are to the Bankruptcy Code, 11 U.S.C. §§ 101 to 1532.

1

checking account with First National Bank of Scotia having a balance of $1,000. None of this amount was claimed as exempt on Schedule C.

Prior to filing, the Debtor was employed at Tecniflex Banksource, Inc. His bi-weekly salary was direct-deposited into his checking account. Other than minimal amounts of interest, the Debtor's bank statements reflect the following deposits in the period leading up to his bankruptcy.

| Date | Amount Deposited | Source | Total Balance |
|---|---|---|---|
| March 4, 2010 | 4,298.00 | Federal Tax Refund | 6,937.83 |
| March 15, 2010 | 500.00 | State Tax Refund | 6,965.51 |
| April 9, 2010 (60 days before filing) | 1,208.58 | Wages | 5,577.74 |
| April 23, 2010 | 1,293.97 | Wages | 5,334.15 |
| May 7, 2010 | 1,287.73 | Wages | 5,901.18 |
| May 21, 2010 | 1,258.06 | Wages | 5,386.13 |
| June 4, 2010 | 1,208.56 | Wages | 5,050.34 |
| June 8, 2010 (day of filing) | | | 3,500.21 |

Prior to the deposit of the Debtor's paycheck on April 9, 2010, the account had a balance of $4,369.16. (*See* Debtor's Mem. of Law (ECF No. 22) Ex.)[2] From April 9, 2010 to June 4, 2010, the Debtor made withdrawals against the account totaling $5,577.02. (*See* Debtor's Mem. of Law Ex.)

The § 341 meeting of creditors was originally scheduled for July 16, 2010. It was adjourned on several occasions, most recently until November 18, 2011. Along with the

---

[2] The court arrived at this number after subtracting the $220.09 withdrawal on April 8, 2010 from the April 6 beginning balance of $4,589.25.

2

adjournments, the court granted extensions of time to the Trustee to file a complaint objecting to the Debtor's discharge.

On July 21, 2010, the Trustee sent a letter to counsel for the Debtor requesting turnover of the $3,500.21 in Debtor's account as of the filing date. The request was ignored. The Trustee then filed the instant motion on September 28, 2010. The Debtor filed an objection to the motion, as well as amended Schedules B and C on October 9, 2010. The amended schedules list an account balance $3,500.21 as of the filing date and claim the entire amount exempt, pursuant to New York Civil Practice Law and Rules ("C.P.L.R.") 5205(d)(2), as wages earned within sixty days of filing for bankruptcy protection.[3]

## ARGUMENT

The Trustee's argument is twofold. First, as a substantive matter, the Trustee argues that the Debtor lost his exemption by commingling exempt wages with non-exempt tax refunds in the same bank account. The Trustee relies on *In re Lubecki*, 332 B.R. 256 (Bankr. W.D.N.Y. 2005) for the principle that, in calculating the exempt portion of the commingled funds, withdrawals are deemed to derive first from exempt assets. Because the balance of the account as of the filing date was less than the amount the Debtor received from his tax refunds, that remaining balance was a non-exempt asset subject to turnover. Second, as a procedural matter, the Trustee points to the fact that the Debtor failed to claim the wage exemption in his initial Schedule C, and argues that the court should deny leave to amend because the exemption was claimed only after the Trustee discovered the asset. The Trustee cites *In re Howe*, Ch. 7 Case No. 08-10551,

---

[3] This case was filed before the enactment of the 2010 Amendments to the New York Debtor and Creditor Law. Under the law in effect at the time, debtors could "'claim either a homestead exemption or a cash exemption, but not both.'" *In re Howe*, Ch. 7 Case No. 08-10551, 2009 WL 2914229 (Bankr. N.D.N.Y. June 26, 2009), *aff'd*, 439 B.R. 257 (N.D.N.Y. 2010) (quoting *In re Gross*, 394 B.R. 693, 696 (Bankr. W.D.N.Y. 2008)). In this case, the Debtor chose to claim a homestead exemption of $50,000 to the exclusion of a cash exemption, and hence must resort to the wage exemption to exempt the disputed funds from his bankruptcy estate.

3

2009 WL 2914229 (Bankr. N.D.N.Y. June 26, 2009) and *In re Cinelli*, Ch. 7 Case No. 05-16962, 2006 WL 3545444 (Bankr. N.D.N.Y. Dec. 8, 2006) in support of the argument that leave to amend should be denied because allowing the amended exemption would prejudice the bankruptcy estate.

The Debtor counters that the funds are exempt under New York law and that schedules can be amended at any time. The Debtor argues that the Trustee's emphasis on the balance in the checking account is misplaced because the direct deposit of the Debtor's salary created the illusion of a cache of funds in the account. Absent direct deposit, the account balance would have been reduced to zero based on receipt and expenditure of the tax refunds; there would remain only exempt wages. The Debtor distinguishes *Howe* and *Cinelli* on the basis that there is no prejudice to creditors in this case.

## DISCUSSION

A chapter 7 bankruptcy estate comprises, among other things, "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Pursuant to § 522(b), debtors may exempt certain property from property of the estate. Exemptions are determined according to the law in effect on the date of the filing of the petition. *See* 11 U.S.C. § 522(b)(3)(A); *Owen v. Owen*, 500 U.S. 305, 314 n.6 (1991). Prior to 2011, New York had "opted out" of the federal exemption scheme, choosing to provide its own exclusive set of exemptions for debtors domiciled in the state. See *In re Nudo*, 147 B.R. 68, 70 (Bankr. N.D.N.Y. 1992) (citing N.Y. Debt. & Cred. Law §§ 282, 284; N.Y. C.P.L.R. 5205(d)(2)).[4] This case concerns the wage exemption under New York law, which provides, in relevant part:

---

[4] The 2010 Amendments to New York Debtor and Creditor Law sections 282, 283, and 285 and C.P.L.R. 5205 and 5206, which took effect on January 22, 2011, increased the available exemptions and gave New York debtors the ability to choose between the state and federal exemption schemes.

4

> The following personal property . . . is exempt from application to the satisfaction of a money judgment . . .
>
> . . . .
>
> . . . ninety per cent of the earnings of the judgment debtor for his personal services rendered within sixty days before, and at any time after, an income execution is delivered to the sheriff or a motion is made to secure the application of the judgment debtor's earnings to the satisfaction of the judgment . . . .

N.Y. C.P.L.R. 5205(d)(2) (McKinney 2010).

Exemption statutes are to be liberally construed in favor of debtors. *See In re Sherman*, 237 B.R. 551, 555 (Bankr. N.D.N.Y. 1999) (citation omitted); *see also In re Keil*, 88 F.2d 7, 8 (2d Cir. 1937). A party in interest may object to the list of property claimed as exempt by a debtor within thirty days after the § 341 meeting of creditors is concluded or within thirty days after any amendment to the debtor's exemption. Fed. R. Bankr. P. 4003(b)(1).[5] "The objecting party bears the burden of proving by a preponderance of the evidence that the exemption claimed by a debtor is improper. Assuming a legal basis for the amended exemption exists, when a party objects, allowance of the amended exemption depends on other considerations, namely, whether there is a showing of bad faith by the debtor or prejudice to creditors." *In re Howe*, 2009 WL 2914229, at *4 (internal quotation marks and citations omitted).

At issue is whether the funds on deposit in the Debtor's checking account at the time of filing are exempt under C.P.L.R. 5205(d)(2) and, if yes, whether it would be prejudicial to allow the Debtor to amend his schedules to exempt those funds.

---

[5] No formal motion was filed objecting to the Debtor's exemptions. Instead, the Trustee raised his objection to the Debtor's exemptions in his Reply to the Debtor's Objection to his Motion to Compel Turnover. The § 341 meeting has not been concluded. Thus, a timely objection to the Debtor's amended exemption claim could still be filed. As the parties have fully briefed the exemption issue, the court will treat the Reply as an Objection.

5

Generally, commingled funds only lose their exempt status when they can no longer be traced. *Compare In re Lubecki*, 332 B.R. 256, 260–61 & n.1 (Bankr. W.D.N.Y. 2005) (funds in debtor's bank account that were traceable to wages could be claimed as exempt), *In re Lichtenberger*, 337 B.R. 322, 324 (Bankr. C.D. Ill. 2006) (commingling does not transmute exempt funds into non-exempt funds, however, the funds must be reasonably traceable to keep their exempt status), *and In re Christensen*, 149 P.3d 40, 49 (Nev. 2006) (commingling does not destroy the exemption as long as tracing is possible), *with In re Schlein*, 114 B.R. 780, 784 (Bankr. M.D. Fla. 1990) (exemption denied because the presence of five sources of funds and multiple withdrawals rendered tracing impossible). The court agrees with the majority view that commingled funds only lose their exempt status when they can no longer be traced. This view "comports with the liberal construction to be accorded exemption statutes in favor of a debtor and his family and the 'fresh start.'" *See In re Miller*, 103 B.R. 65, 67 (N.D.N.Y. 1989) (citation omitted). In this case, all but two of the deposits into the account were wages. Because the wages can be traced, they can retain their exempt status.

Courts have adopted several approaches to tracing exempt funds in a commingled account, including: (1) the lowest intermediate balance approach ("LIBA"); (2) the pro-rata approach; (3) the last-in, first-out approach ("LIFO"); and (4) the first-in, first-out approach ("FIFO"). *In re Lichtenberger*, 337 B.R. at 324 (citation omitted). LIBA "operates on a common-sense view that dollars are fungible and cannot practically be earmarked in an account." *C.O. Funk & Sons, Inc. v. Sullivan Equip., Inc.*, 431 N.E.2d 370, 372 (Ill. 1982). Under LIBA, proceeds are presumed to "remain in the account as long as the account balance is equal to or greater than the amount of the proceeds deposited." *Id.* Under the pro-rata approach, withdrawals from a commingled account are "attributed to the several funds in proportion to

their respective sizes at the time of the withdrawals." *In re Christensen*, 149 P.3d at 40.  Under LIFO, withdrawals against the account reduce the most recent deposits first, while under FIFO they reduce the oldest first.  *See Foley v. Transocean Ltd.*, 272 F.R.D. 126, 129 (S.D.N.Y. 2011).

The Western District of New York has adopted "an administrative rule of convenience" when dealing with wages commingled with other funds. *In re Wrobel*, 268 B.R. 342, 344 (Bankr. W.D.N.Y. 2001).  Under this rule, the trustee is generally entitled to the lesser of two amounts: "(1) the amounts on deposit in the account on day sixty-one, ten percent of the debtor's earnings for services rendered within sixty days of the date of the filing of the petition and all non-earnings deposited into the account within sixty days of the filing of the petition; or (2) the amount on deposit in the account as of the date of filing." *In re Coolbaugh*, 250 B.R. 162, 167 (Bankr. W.D.N.Y. 2000).  The Western District adopted this approach in response to the "cost beneficial policy," whereby some of the trustees in that district had stopped pursuing minimal checking account balances because they felt it was not an efficient use of limited resources.  *Id.* at 165 & n.7.

The court is not inclined to adopt an "administrative rule of convenience."  Guided by the liberal construction to be accorded exemption statutes in favor of debtors, the court uses the FIFO approach to trace the exempt funds in this case. *See, e.g.*, *In re Lichtenberger*, 337 B.R. 322, 326 (Bankr. C.D. Ill. 2006).  In doing so, however, the court is mindful of Justice (then Chief Judge) Cardozo's admonition in *Carson v. Federal Reserve Bank of New York*, 172 N.E. 475, 480 (1930), where he stated:

> We have no thought to suggest that this or any other formula as to the application of payments to the items of an account is of such inflexible validity as to admit of no exceptions. Whatever rule is framed will be subordinated to the broader principle that an application, usually appropriate, may be varied by the court when variance is necessary to promote the ends of justice.

7

This court finds that, under the FIFO approach, the Debtor is entitled to exempt his earnings in the amount of $3,149.02. Prior to the deposit of the Debtor's paycheck on April 9, 2010, the Debtor's checking account had a balance of $4,369.16. In the sixty days leading up to filing, the account was periodically infused with the Debtor's direct-deposited paychecks totaling $6,526.90. During that same time period, the Debtor made withdrawals against the account totaling $5,577.02. Applying these withdrawals to the oldest deposits first, the court finds that the $4,369.16 of non-exempt funds in the account was depleted long before the Debtor filed his bankruptcy petition. The $3,500.21 balance remaining in the account on the filing date derived from the Debtor's earnings. Subtracting $1.30 of non-exempt interest leaves $3,498.91. Ninety percent of that amount, $3,149.02, is exempt. The remaining $349.89 is non-exempt property of the estate.

Finally, the court must consider whether to disallow the amendments to the Debtor's schedules. "Debtors may, under F.R.B.P. 1009(a), amend their bankruptcy schedules, including Schedule C, at any time before their case is closed." *In re Howe*, Ch. 7 Case No. 08-10551, 2009 WL 2914229 (Bankr. N.D.N.Y. June 26, 2009), *aff'd*, 439 B.R. 257 (N.D.N.Y. 2010) (footnote and citation omitted). Case law supports debtors' right to freely amend their exemptions. *Id.* (citing *In re Cinelli*, Ch. 7 Case No. 05-16962, 2006 WL 3545444, at *3 (Bankr. N.D.N.Y. Dec. 8, 2006); *In re Fournier*, 169 B.R. 282, 283 (Bankr. D. Conn. 1994)). "Courts have no discretion to reject amendments unless a debtor has acted in bad faith or concealed property, or the amendment would prejudice creditors." *In re Turner*, Ch. 7 Case Nos. 09-11281, 09-11365, 09-11420, 09-11466, 2011 WL 482840, at *5 (Bankr. D. Vt. Feb. 3, 2011) (citations omitted). In this case, the court does not find that the Debtor intentionally concealed property. While the discrepancy between his original and amended Schedule B may certainly raise an eyebrow, it

does not constitute bad faith sufficient to disallow the amendment. Nor is there prejudice to creditors in this case; the Trustee has yet to administer assets.

## CONCLUSION

Based upon the foregoing, the Trustee's objection to the Debtor's claim of exemption is overruled. The court grants the Debtor ten days leave to file an amended Schedule C in accordance with this order. The Debtor is directed to turn over to the Trustee within ten days of the date of this order $351.19 of non-exempt funds.

It is SO ORDERED.

Dated: November 4, 2011     /s/ Robert E. Littlefield, Jr.
_____
Hon. Robert E. Littlefield, Jr.
Chief U.S. Bankruptcy Judge